PETHYBRIDGE, GUARDIAN, APPELLANT, v. FIRST STATE BANK OF LIVINGSTON ET AL., RESPONDENTS.

(No. 5,804.)

(Submitted January 7, 1926.   Decided January 18, 1926.)

[243 Pac. 569.]

*Banks and Banking — Insolvency — Guardian and Ward — Trust Funds — Preferred Claims — What are not — General and Special Deposits.*

Banks and Banking—Special Deposits—Trust Relation Between Bank and Depositor Prerequisite.
1.   The trust relation which will impress upon a deposit the character of a special deposit is not the relation existing between the depositor of trust moneys and his *cestui que trust*, but that existing between the bank and the depositor.

Same—Deposit Made by Trustee is General, When.
2.   In the absence of a special agreement between a depositor and a bank, or of circumstances sufficient to create a trust, whereby the deposit becomes special, a deposit made by a trustee (guardian) is a general one under which the bank merely becomes the debtor of the depositor.

Same—Guardian and Ward—Guardian may Deposit Trust Funds in Reliable Bank.
3.   The position of guardian is one of trust and not of agency; the funds coming into his hands as such are trust funds which he must keep safely, and such of them as are necessary to be kept on hand for the care and maintenance of the ward he may, though not required to do so by the statute, deposit in a reliable bank, exercising due care in its selection, without being open to the charge of having violated the law of his trust, or rendering himself personally liable for the deposit in case of failure of the bank.

Same—Deposit of Trust Fund by Guardian—Duty of Guardian.
4.   In order to escape personal liability for funds of his ward deposited in a bank by a guardian, he must make the deposit in the former's name, or see to it that they appear on the books of the bank under a designation indicating that they belong to the ward and not to the guardian.

Same—Insolvency—General Deposit by Guardian not Preferred Claim.
5.   Under the rule declared in paragraph 2 above, the mere deposit of trust funds by a guardian under a designation showing his fiduciary character, without a special agreement between the bank and himself

---

1.   What is special, as distinguished from general, deposit, see notes in Ann. Cas. 1913E, 45; Ann. Cas. 1918B, 390.   See, also, 3 R. C. L. 518.
2.   Deposits in bank by fiduciary, see note in 42 Am. Rep. 168.
Trust fund deposit as preferred claim against insolvent bank, see note in Ann. Cas. 1913D, 391.
5.   Deposits in name of "trustee," see note in 82 Am. St. Rep. 520.

for the return of the identical money or a showing of other special circumstances, did not make it a special deposit, so as to entitle the depositor to prevail in his action against the receiver of the bank to compel the allowance of his claim as a preferred one.

Same—Insolvency—General Deposit Drawing Interest—Not Entitled to Preference.

6. The fact that a deposit, general in character, was made with the understanding that it should draw interest on balances did not have the effect of converting it into a special deposit.

Same — Insolvency — Deposit of Trust Funds — When Bank Involuntary Trustee.

7. Where a deposit of trust funds is unlawfully made with the active participation of the bank, it becomes an involuntary trustee under the trust and may be compelled to place the trust estate *in statu quo.*

Same—Insolvency—Unauthorized Act of Guardian in Entering into Creditors' Agreement for Reorganization of Bank—Effect on Trust Fund on Deposit as to Preference.

8. Where a guardian without authority of court entered into a creditors' agreement for the reorganization of a failed bank in which he had funds of his ward on general deposit, he did not by his unauthorized act become the holder of a preferred claim against the bank upon its second failure, but was entitled to no more than to have the fund placed *in statu quo* (par. 7), *i. e.,* to a *pro rata* share in the assets of the bank as one of its general creditors.

---

[1] Banks and Banking, 7 C. J., sec. 308, p. 633, n. 15.
[2]. Banks and Banking, 7 C. J., sec. 304, p. 628, n. 91; sec. 305, p. 628, n. 94; sec. 306, p. 631, n. 5; sec. 308, p. 633, n. 15.
[3] Guardian and Ward, 28 C. J., sec. 204, p. 1123, n. 45, 45 New; sec. 244, p. 1145, n. 54, 55. Trusts, 39 Cyc., p. 420, n. 87.
[4] Guardian and Ward, 28 C. J., sec. 244, p. 1145, n. 65. Trusts, 39 Cyc., p. 421, n. 89.
[5] Banks and Banking, 7 C. J., sec. 306, p. 630, n. 98, 3; sec. 308, p. 633, n. 15; sec. 544, p. 750, n. 60; sec. 548, p. 751, n. 78.
[6] Banks and Banking, 7 C. J., sec. 306, p. 630, n. 3.
[7] Banks and Banking, 7 C. J., sec. 308, p. 633, n. 16.
[8] Banks and Banking, 7 C. J., sec. 548, p. 752, n. 81 New.

*Appeal from District Court, Park County; H. J. Miller, Judge.*

Action by W. H. Pethybridge, as guardian of the person and estate of Edward Champion, an incompetent person, against the First State Bank of Livingston and its receiver, to compel the allowance of an amount on deposit at the time of the bank's insolvency as a preferred claim. From a judgment for defendants, plaintiff appeals. Affirmed.

*Messrs. Gibson & Smith,* for Appellant, submitted a brief; *Mr. Vard Smith* argued the cause orally.

The theory of the appellant's case is that appellant had no authority to agree to a time deposit of the funds of his trust, and that the respondent bank was charged with notice of this limitation upon appellant's authority. A loan of the trust funds by the appellant would have been a violation of the trust. Either it must be presumed that the parties intended to do what was lawful, and the deposit made by the appellant was a special deposit, or if it was otherwise, the respondent bank participated in the wrong and it and its receiver should be held as involuntary trustees.

We will concede that a guardian, or other trustee, may lawfully deposit the funds of his trust, in a bank of good standing, on open account, for a limited time, without becoming individually liable for the loss of the funds, but such deposit must be temporary only, pending investment or other lawful disposition thereof, and any deposit for a fixed period of time, upon a certificate of time deposit, amounts to a loan without security, which is prohibited by the general law applicable to trust funds and trusts. (*Corcoran* v. *Kostremetinoff*, 164 Fed. 685, 21 L. R. A. (n. s.) 399, 91 C. C. A. 619, and cases cited.)

If a trust fund has been commingled with private funds, and the identical money cannot be identified and segregated, the mass will be impressed with the trust to the amount of such trust fund, and if, after the funds are commingled, there be withdrawals from time to time, it will be presumed that the moneys so drawn were from the trustee's own portion of the fund, rather than from the moneys held by him in trust. (*Hawaiian Pineapple Co.* v. *Browne,* 69 Mont. 140, 220 Pac. 1114; *Elizalde* v. *Graves,* 137 Cal. 634, 66 Pac. 369, 70 Pac. 861; *Yellowstone County* v. *First T. & Sav. Bank,* 46 Mont. 439, 128 Pac. 596.)

Where trust funds are deposited in violation of law in a bank which has knowledge of the facts, the title does not pass, and a trust results which, in case of insolvency, may be enforceable against the receiver. (*Phillips* v. *Yates Cent. Nat. Bank,* 98 Kan. 383, L. R. A. 1917A, 680, 158 Pac. 23; see, also, *Smith* v. *Fuller,* 86 Ohio, 57, Ann. Cas. 1913D, 387, L. R. A. (n. s.) 1916C, 6, 99 N. E. 214.)

*Messrs. O'Connor & Miller,* for Respondent, submitted a brief; *Mr. M. J. O'Connor* argued the cause orally.

In case of a general deposit, the depositor is not entitled to a preference over the other creditors of the bank. (*Washington Shoe Mfg. Co.* v. *Duke,* 126 Wash. 510, 37 A. L. R. 611, 218 Pac. 232, 233.) A deposit will be deemed general unless it is made special by special contract, and in the absence of an agreement to the contrary, it will be presumed to be a general deposit and not a special deposit. (*Washington Shoe Mfg. Co.* v. *Duke, supra; Bank of Blackwell* v. *Dean,* 9 Okl. 626, 60 Pac. 226; *Schofield Mfg. Co.* v. *Cochran,* 119 Ga. 901, 47 S. E. 208; *Town of Manitou* v. *First Nat. Bank,* 37 Colo. 344, 86 Pac. 75; *Nichols* v. *State,* 46 Neb. 715, 65 N. W. 774.)

A deposit made by a trustee, executor, administrator, assignee, agent, public officer who is serving as a fiduciary are simply general deposits and if the bank fails to pay them, the fiduciary has no peculiar claims or rights over other depositors. (5 Cyc. 514; 7 Cor. Jur. 633; 3 R. C. L. 518; *Murphy* v. *Nett,* 51 Mont. 82, 87, L. R. A. 1915E, 797, 149 Pac. 713.)

The fact the deposits were made in the savings department of the bank would not change the deposits from general deposits to special deposits. (*Colorado Savings Bank* v. *Evans,* 12 Colo. App. 334, 56 Pac. 981.)

As a rule, deposits are general deposits, unless: (1) The money or thing is deposited with the understanding that the

identical money or thing is to be returned to the depositor; (2) The money or thing is to be used for a specially designated purpose; or (3) The deposit is unlawful or wrongful. (*Allibone* v. *Ames,* 9 S. D. 74; 33 L. R. A. 585; 68 N. W. 165.)

A trustee or fiduciary may deposit the funds in a bank, if it is prudent to do so, in the absence of statute. (*Officer* v. *Officer,* 120 Iowa, 389, 98 Am. St. Rep. 365, 94 N. W. 947; *Law's Estate,* 144 Pa. 499, 14 L. R. A. 103, 22 Atl. 831; *Northwood* v. *Harness,* 98 Ind. 134, 49 Am. Rep. 739; *Jacobus* v. *Jacobus,* 37 N. J. Eq. 17; *People* v. *Faulkner,* 107 N. Y. 477, 14 N. E. 415; *In re Grammel,* 120 Mich. 487, 79 N. W. 706.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff, as guardian of one Ted Champion, an incompetent person, commenced this action against the defendant bank and one Bodine, its receiver, to compel the allowance of the amount he had on deposit at the time the bank closed its doors, as a preferred claim. Issue was joined, and the evidence submitted to a referee, who made findings thereon and submitted them to the court. The court adopted certain of the findings, and rejected others, and, from the findings finally made, concluded as a matter of law that the claim of plaintiff should be allowed, but merely as that of a general creditor. Judgment was entered accordingly, and from this judgment plaintiff has appealed. There is no conflict in the evidence and no dispute as to the facts.

On June 23, 1917, plaintiff opened a "savings account" with the defendant bank, with the privilege of checking against it. No certificate of deposit was issued to him, and the account differed from the usual checking account only in that the bank agreed to pay interest on balances, and carried the account under the title "William Pethybridge,

Guardian of Ted Champion.'' The money deposited was commingled with other funds of the bank. Thereafter the account was from time to time increased or diminished by deposits and withdrawals, until, in the latter part of the year 1921, the bank became insolvent and closed its doors, at which time plaintiff's balance amounted to $626.66.

In January, 1922, the bank reorganized by securing a creditors' agreement, which was signed by this plaintiff, and under the terms of which the plaintiff agreed to accept a certificate of deposit for the amount of his balance, payable in one year, with the privilege, at the option of the board of directors of the bank, of renewing the same for a second year. Such a certificate was thereafter issued by the bank, but was never delivered, as plaintiff never surrendered his original deposit book or evidence of indebtedness. Plaintiff signed the "creditors' agreement" without first obtaining authority of the court having control over the guardianship matter.

The reorganization of the bank was unsuccessful, and, on June 23, 1923, it again closed its doors, and defendant Bodine was duly appointed receiver. The only cash coming into the hands of the receiver was the sum of $1,752.51.

Plaintiff makes thirty assignments of error, based upon the rejection and adoption of the several findings of the referee, upon the conclusions of law drawn therefrom and upon the entry of judgment in favor of defendant and against plaintiff, which it is not necessary to set forth in this opinion, as they raise but the question of the nature of the deposit and the right of the plaintiff to preference. His contentions are:

(1) That, as plaintiff was a guardian dealing with his ward's money, which fact was known to the bank, the deposit was special and not general.

(2) That, as the deposit was by agreement to draw interest, it constituted a special deposit.

(3)· That the deposit on time, in 1923, under the creditors' agreement, was a loan to the bank, without security, of trust funds, and without authority of court, of which facts the bank was chargeable with notice, and therefore that the guardian acted illegally with the connivance of the bank, and under such circumstances the bank is an involuntary trustee of the trust funds.

1. The trust relation, which will impress upon a deposit the [1, 2] character of a special deposit, is not the relation existing between the depositor of a trust fund and his *cestui que trust,* but that existing between the *bank* and the depositor. There are but two kinds of deposits—those where the bank becomes a trustee for the depositor, by special agreement or through circumstances sufficient to create a trust, and general deposits, where the bank merely becomes a debtor of the depositor, and, in the absence of such contract or circumstances, a deposit will be deemed a general deposit. (*Carlson* v. *Kies,* 75 Wash. 171, 47 L. R. A. (n. s.) 317, 134 Pac. 808; *Kies* v. *Wilkinson,* 101 Wash. 340, 172 Pac. 351; *Bank of Blackwell* v. *Dean,* 9 Okl. 626, 60 Pac. 226; *Schofield Mfg. Co.* v. *Cochran,* 119 Ga. 901, 47 S. E. 208.)

The position of guardian is one of trust and not of agency. [3]   (12 R. C. L. 1123.) "The relation of a guardian and ward is confidential, and is subject to the provisions of this code relative to trusts" (sec. 5882, Rev. Codes 1921), and the funds coming into the hands of the guardian are therefore, as between the guardian and the ward, trust funds which the guardian is by law required to "keep safely" (sec. 5881). There is no provision in our Code for the deposit of funds coming into the hands of the guardian, but the guardian is chargeable with the care and maintenance of his ward, and the payment of just debts contracted, out of the ward's personal estate and the income from real property, if sufficient (secs. 10414 and 10417, Rev. Codes 1921), and for this purpose it is necessary to retain under the control of the guardian

a sufficient sum to discharge these obligations as they arise, and common custom and usage, and the exercise of that degree of care required in the handling of trust funds, would dictate that money kept on hand for this purpose should be deposited in a reliable bank, and, where a trustee has exercised due care in the selection of the depository, it cannot be said that he has either violated the law or his trust. Thus, in the *Matter of the Estate of William Law, a Minor,* 114 Pa. 499, 14 L. R. A. 103, 22 Atl. 831, it is said: "Banks of deposit are a recognized necessity in the commercial world. A trustee who would continuously keep, for any considerable length of time, a large sum of money about his person or in his house, rather than deposit it for safe-keeping in a solvent and reputable bank or trust company, where all the precautions may be exercised for its safety, might justly be regarded as derelict in duty. No one would be accredited with the exercise of common prudence who would keep his own money in this way."

In a note to the above case (14 L. R. A. 103) it is stated that "some right to deposit trust funds in bank with the accompanying freedom from liability for its loss is universally recognized." Among the cases cited in support of the above statement is that of *Churchill* v. *Hobson,* 1 P. Wms. 243, holding that, if the deposit is made from necessity or in conformity to the common usage of mankind, the trustee will not be liable for the loss upon the failure of the bank. This rule is recognized in the case of *City of Livingston* v. *Wood,* 20 Mont. 91, 49 Pac. 437.

From the amount involved here, coupled with the fact that withdrawals were made from time to time, it is apparent that these funds were not such as should have been invested, but were merely necessary funds for the care and maintenance of the ward, and, as to such, the guardian was acting in the performance of his duty in depositing them. There is no contention that at the time of the deposit the

bank was not a solvent and reputable institution, or that knowledge was brought home, in any manner, to the guardian of the impending failure of the bank.

2. In order, however, to escape personal liability, the [4] trustee must not deposit the funds in his own name but in the name of his *cestui que trust,* or by so distinguishing it on the books of the bank as to indicate that the funds are those of the latter and not his own. (*Re Stafford,* 11 Barb. (N. Y.) 353; *Williams* v. *Williams,* 55 Wis. 300, 42 Am. Rep. 708, 12 N. W. 465, 13 N. W. 274; *Naltner* v. *Dolan,* 108 Ind. 500, 58 Am. Rep. 61, 8 N. E. 289; *Summers* v. *Reynolds,* 95 N. C. 404.)

3. Where the foregoing conditions are complied with, the [5] mere fact that the funds deposited were trust funds does not constitute a special deposit; the deposit is general, and the relation of debtor and creditor exists between the trustee and the bank (*Murphy* v. *Nett,* 51 Mont. 82, L. R. A. 1915E, 797, 149 Pac. 713; *Paul* v. *Draper,* 158 Mo. 197, 81 Am. St. Rep. 296, 59 S. W. 77; *Ringo* v. *Fields,* 6 Ark. 43; *Fletcher* v. *Sharpe,* 108 Ind. 276, 9 N. E. 142; *Jones* v. *Chesebrough,* 105 Iowa, 303, 75 N. W. 97; *McAfee* v. *Bland,* 11 Ky. Law Rep. 1, 11 S. W. 439; *Shaw* v. *Bauman,* 34 Ohio St. 25; *Swartout* v. *Mechanics' Bank,* 5 Denio (N. Y.), 555), and the addition of words showing a fiduciary capacity, while it may render the depository chargeable with notice as to whence the depositor derived the funds, in the absence of some special agreement for the return of the identical money, or other special circumstances, cannot create a special deposit (3 R. C. L. 518; *Officer* v. *Officer,* 120 Iowa, 389, 98 Am. St. Rep. 365, 94 N. W. 947; *Alston* v. *State,* 92 Ala. 124, 13 L. R. A. 659, 9 South. 732; 2 Michie on Banks & Banking, sec. 153).

4. Nor does the fact that the deposit by agreement draws [6] interest change its nature. (3 R. C. L. 519.) The situation here is similar to that of a deposit of county funds,

under our Depository Act (Laws 1913, Chap. 88), wherein it is provided that the funds shall draw interest but nevertheless be subject to withdrawal at any time. Such deposit is held to be a general and not a special deposit. (*State ex rel. School District* v. *McGraw,* 74 Mont. 152, 240 Pac. 812.)

5. The final contention of plaintiff is that, by entering into [7, 8] the "creditors' agreement" without obtaining an order of court, the guardian violated his trust, and that he did so with the co-operation of the bank, which was chargeable with notice of his powers in this regard, and therefore an involuntary trust must be declared.

It is true that one to whom property is transferred in violation of a trust holds the same as an involuntary trustee under such trust, unless he purchased it in good faith and for a valuable consideration (sec. 7900, Rev. Codes 1921), and this principle is applied specifically where a deposit of trust funds is wrongfully and unlawfully made, with the active participation of the bank, in *Yellowstone County* v. *First Trust & Savings Bank,* 46 Mont. 439, 128 Pac. 596, and *Kelly* v. *Farmers' State Bank,* 54 Mont. 515, 172 Pac. 130. But the facts before us do not warrant the application of this rule.

Had the agreement been that the guardian would deposit a sum of money in his hands as guardian, on time deposit for one year, in aid of the reorganization of the bank, an entirely different question would be presented, but where no actual funds were, at that time, deposited, and the funds in the bank could not have been withdrawn for redeposit, admitting that plaintiff had no authority to enter into the creditors' agreement without first obtaining an order of court, and that one dealing with such a trustee must take notice of the court's authority to control such dealings as are within its jurisdiction, and, if the trustee's acts are not authorized, he must be prepared to immediately place the estate *in statu quo.* (*In re Connolly's Estate,* 73 Mont. 35, 235 Pac. 408),

what, under the facts before us, constitutes *"statu quo"* of this estate?

Before entering into the creditors' agreement, the plaintiff was a general creditor of the insolvent bank, entitled to a *pro rata* share of the assets thereof. It does not appear from the record that those assets differed materially after the second closing of the bank from what they were at the time the bank first closed. Certainly, by his unauthorized act, plaintiff could not acquire, as against other creditors of the bank, any greater advantage than he would have had but for such act. To now advance him to the position of the holder of a preferred claim would be neither equitable nor just.

By its decree declaring plaintiff a general creditor of the bank, entitled to a *pro rata* share of its assets, the court placed the estate *in statu quo,* and, as between the plaintiff and defendants, nothing further could be done.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.